| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------------------ X<br>THE RICE CORPORATION, a Delaware corporation   :<br>d/b/a/ THE RICE COMPANY USA,                                    :<br>                                                                                              :<br>                                                         Plaintiff,          :<br>                                                                                              :<br>                       -against-                                              :<br>                                                                                              :<br>EXPRESS SEA TRANSPORT CORPORATION,         :<br>CAPITAL PRODUCT PARTNERS LP,                           :<br>CAPITAL SHIP MANAGEMENT CORP., and              :<br>CAPITAL SHIP MANAGEMENT (USA) CORP.,          :<br>                                                                                              :<br>                                                         Defendants.      :<br>------------------------------------------------------------------ X | USDC SDNY<br>DOCUMENT<br>ELECTRONICALLY FILED<br>DOC #:_____<br>DATE FILED:  5/26/2015<br><br>14-CV-5671 (VEC)<br><br>MEMORANDUM<br>OPINION AND ORDER |

VALERIE CAPRONI, United States District Judge:

Plaintiff, The Rice Corporation d/b/a The Rice Company USA ("TRC"), filed this action seeking to enforce an arbitration award obtained against Defendant Express Sea Transport Corporation ("ESTC") and its alleged alter-ego entities, Capital Product Partners LP, Capital Ship Management Corp., and Capital Ship Management (USA) Corp. (the "Capital Defendants"), following an alleged breach of contract and settlement dispute between TRC and ESTC. During the initial pretrial conference, the Court directed the parties to brief the question of whether the Court has subject matter jurisdiction over this case in light of the Second Circuit's decision in *D'Amico Dry Limited v. Primera Maritime (Hellas) Limited*, 756 F.3d. 151 (2d Cir. 2014). After reviewing the parties' submissions, the Court finds that it lacks subject matter jurisdiction over Plaintiff's claims. Accordingly, this case is DISMISSED.

## BACKGROUND[1]

On or about April 4, 2007, TRC, as charterer, and ESTC, as disponent owner, entered into a time charter party for the charter of the M/V APOSTOLOS II (the "Charter Agreement"). Pl.'s Mem. at 1. Disputes arose regarding the timeliness of TRC's payments, and ESTC withdrew the vessel. TRC claimed ESTC had breached the Charter Agreement, *id.*, and took the dispute to arbitration. *Id.* at 2. Prior to the arbitrators reaching a decision on the merits of TRC's breach of contract claim, ESTC offered to settle the claim for $1.275 million. The offer specified that it would remain open only until the "close of business" on April 29, 2009. *Id.* TRC accepted the offer by email sent at 17:21 on April 29, 2009. *Id.* Asserting that TRC's acceptance was untimely, ESTC purported to withdraw the offer and refused to pay the settlement. *Id.*

TRC then asked the arbitration panel to determine whether ESTC was bound by its settlement offer. The arbitration panel found (1) that it had jurisdiction under the Charter Agreement to determine whether an enforceable settlement agreement had been reached and (2) that the parties had entered into an enforceable settlement agreement such that TRC was entitled to payment of the settlement amount. *Id.* In so deciding, the panel relied on clauses 17 and 73 of the Charter Agreement, which provide, respectively:

> (17) That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred (as per clause 73).
>
> (73) Arbitration. Any dispute arising under the Charter to be referred to arbitration in London, . . . . the award of the arbitrators or the Umpire to be final and binding upon both parties . . . . This contract is governed by English Law and there shall apply to all proceedings under this Clause in terms of the London Maritime Arbitrators Association ["LMAA"] current at the time when the arbitration proceedings were commenced.

---

[1] As the party asserting that subject matter jurisdiction is proper, the Court construes all facts in favor of Plaintiff, while recognizing the Capital Defendants' reservation of rights to contest Plaintiff's alleged facts in the future. *See* Defs.' Mem. at 2 n1.

King Aff. Ex. A at 7. The panel further relied on paragraph 10 of the "LMAA terms 2006," which provides:

> Notwithstanding the terms of any appointment of an arbitrator, unless the parties otherwise agree the jurisdiction of the tribunal shall extend to determining all disputes arising under or in connection with the transaction the subject of the reference . . . .

*Id.* Based on these provisions, the panel found that the parties' "dispute as to whether claims arising under the [Charter Agreement] have been settled or not" was a "dispute[] arising in connection with the [Charter Agreement]." *Id.* at 25. The Panel further determined that the settlement agreement was not a separate contract that replaced the Charter Agreement. *Id.* at 35.

ESTC did not pay the arbitration award, and TRC brought the matter before the High Court of Justice in London, from which it obtained an order to enforce the arbitral award as a judgment. King Aff. ¶ 10. After TRC's efforts to enforce its English judgment against ESTC failed, it obtained a judgment against ESTC in this District in proceedings before Judge Pauley. *The Rice Corporation v. Express Sea Transport Corporation*, 13-CV-43 (WHP) (S.D.N.Y. Jan. 8, 2014) (Dkt. 31). In the present action, TRC seeks to enforce its judgment against the Capital Defendants as alleged alter-egos of ESTC.

## DISCUSSION

Section 1333 of Title 28, United States Code, gives federal district courts the power to decide "[a]ny civil case of admiralty or maritime jurisdiction." It is beyond dispute that "a charter party agreement is a maritime contract" subject to federal admiralty jurisdiction. *Fednav, Ltd. v. Isoramar, S.A.*, 925 F.2d 599, 601 (2d Cir. 1991) (citing *Armour & Co. v. Fort Morgan S.S. Co.*, 270 U.S. 253, 259 (1926); *Morewood v. Enequist*, 64 U.S. (23 How.) 491, 493–94 (1860)). On the other hand, the Second Circuit has consistently suggested that an agreement to

settle a claim that arises under a charter agreement is not a maritime contract. Accordingly, lawsuits regarding such agreements are not within the court's admiralty jurisdiction.

In *Fednav*, for example, the plaintiff chartered a vessel from the defendant and certain cargo was damaged on board. The two parties negotiated a settlement relative to the damage pursuant to which each agreed to pay approximately 50% of the damages. *Fednav*, 925 F.2d at 600. When defendant refused to pay its portion of the damage claim, plaintiff brought suit for breach of the settlement agreement. *Id.* at 600-01. The District Court dismissed the case for lack of subject matter jurisdiction, and, on appeal, the Second Circuit affirmed, finding that the defendant's agreement to contribute to the settlement was not in itself a maritime contract. *Id.* at 601. In so holding, the Second Circuit stated:

> The reason for this rule is clear: "The direct subject-matter of the suit is the covenant to pay such damages, which neither involves maritime service nor maritime transactions; and . . . the mere fact that the event and measure of liability are referable to the charter party does not make the [agreement to pay] a maritime contract, nor make its obligation maritime in the jurisdictional sense."

*Id.* (citing *Pacific Surety Co. v. Leatham & Smith Towing & Wrecking Co.,* 151 F. 440, 443 (7th Cir. 1907)).

In *D'Amico Dry Ltd. v. Primera Mar. (Hellas) Ltd.,* 756 F.3d 151, 152-53 (2d Cir. 2014), plaintiff brought suit to enforce a judgment entered by the English commercial division court on a forward freight agreement ("FFA") between itself and defendant. The District Court dismissed the action, finding that it did not have subject matter jurisdiction because the English judgment was not rendered by an admiralty court and the underlying claim did not sound in admiralty under English law. *Id.* at 153. On appeal, the Second Circuit vacated the judgment and remanded the case holding that, under 28 U.S.C. § 1333, "United States courts have jurisdiction to enforce a judgment of a foreign non-admiralty court if the claim underlying that judgment

would be deemed maritime under the standards of U.S. law." *Id.* In reaching that conclusion, the Second Circuit distinguished *Fednav* and other cases involving settlement agreements or guarantees; in *D'Amico* the underlying claim may have been subject to United States admiralty jurisdiction and the English court had "adjudicated the underlying claim in plaintiff's favor." *Id.* at 159.

> In the settlement context, agreement between the parties does not legitimate the original maritime claim. There is no telling whether the defendant who agrees to pay money in settlement of the claim is in any way by doing so acknowledging validity of the claim, or in contrast is continuing to deny it categorically while agreeing to pay some money to avoid the inconvenience, expense, and risk of further litigation. The settlement extinguishes that claim through private contract without validating it. In contrast, where a court has rendered a final judgment on the claim, the claim has been validated. If that claim was of maritime nature, the maritime nature of the claim has been validated, furnishing good reason for the dispute over the enforceability of the judgment to be heard as a maritime matter in the admiralty jurisdiction of the federal court.

*Id.* at 159-60. The Second Circuit's analysis suggests that, without an adjudication on the merits of the underlying claim, a settlement agreement, or any agreement "to pay to resolve a maritime claim is not itself a maritime contract and does not confer admiralty jurisdiction over a subsequent suit on that agreement to resolve the underlying maritime claim." *Id.* at 159.

Plaintiff argues that, even though it seeks to enforce a judgment arising from a settlement as opposed to a judgment arising from its underlying breach of contract claim, this case falls within the Court's admiralty jurisdiction because Plaintiff's "specific claim arising from ESTC's refusal to honor the settlement agreement was a claim that arose under the charter party, which was itself unquestionably a maritime contract" in accordance with "the law of the nation that rendered the judgment." Pl.'s Mem. at 6-7 (citing *D'Amico*, 756 F.3d at 160). On this basis, Plaintiff argues that the English arbitration panel "explicit[ly] conclu[ded] that ESTC had

breached the charter party," and therefore Plaintiff's action is "not merely an action . . . seeking to enforce a settlement agreement." Pl.'s Mem. at 7-8.

Plaintiff reads too much into the arbitration panel's decision. The arbitration panel did not conclude that ESTC had breached the Charter Agreement but only that it had jurisdiction to hear the dispute over whether there was a settlement because the Charter Agreement's arbitration clause gave it jurisdiction to hear disputes that arose "in connection with the charterparty." King Aff. Ex. A at 10, 13, 16-17. In essence, Plaintiff argues that, because the arbitration panel relied on the Charter Agreement for jurisdiction to hear the settlement dispute, its determination that ESTC "breached" the settlement agreement equates to a determination that ESTC breached the underlying Charter Agreement, thereby rendering this dispute a maritime claim under English law. The Court disagrees with TRC's characterization of what the arbitration panel did. The panel never made any determination whether ESTC had breached the underlying Charter Agreement; it decided only that ESTC and TRC had a settlement agreement and that ESTC breached it. In addition, neither the panel nor the High Court of Justice made a finding that the settlement dispute constituted a maritime claim under English law.

Even if the Court were to accept Plaintiff's argument that the arbitration panel's decision, as affirmed by the High Court of Justice, constituted "a final judgment on [a] claim" that is considered maritime under principles of English law, that would not necessarily confer admiralty jurisdiction over the suit under United States law. *See D'Amico*, 756 F.3d at 160. In *D'Amico*, the Second Circuit explicitly reserved the question of whether the maritime nature of a claim under foreign law would be sufficient to subject it to federal admiralty jurisdiction. *Id.* at 162 n.7 ("We have no reason in this case to decide whether the maritime nature of the claim under the law of the nation that rendered the judgment would also suffice to bring a suit on the judgment within the jurisdiction established by § 1333."). The Second Circuit suggested, however, that

6

choice of law principles and the need for "quick and relatively certain resolution" of disputes regarding federal subject matter jurisdiction weigh in favor of using U.S. law to determine whether the claim underlying a foreign judgment is a maritime claim. *See id.* at 161 ("If the characterization of the claim under foreign law is controlling, the parties will be compelled in many cases to carry on an expensive, cumbersome litigation involving dueling experts on foreign law, merely to determine whether the suit belongs in federal or state court.").

Under United States law, the claim underlying Plaintiff's foreign judgment is a claim to enforce a settlement agreement. As such, it is not an admiralty claim. *See Fednav,* 925 F.2d at 602 (citing *Consolidated Bathurst, Ltd. v. Rederiaktiebolaget Gustaf Erikson*, 645 F.Supp. 884, 886 (S.D. Fla. 1986) ("An agreement to satisfy an obligation arising from a maritime tort or contract is not a maritime contract, and an action for breach of such a contract is not an admiralty claim."); *Mulvaney v. Dalzell Towing Co.*, 90 F.Supp. 259, 260 (S.D.N.Y. 1950) ("If this is an action for breach of contract to compromise and settle, it is not within the admiralty jurisdiction.")).[2] *See also D'Amico*, 756 F.3d at 159-60. The Court therefore finds that Plaintiff's claims are not subject to federal admiralty jurisdiction.

---

[2] The decisions in *Sagastume v. Lampsis Nav. Ltd., Drosia*, 579 F.2d 222, 223 (2d Cir. 1978), *Capotorto v. Compania Sud Americana de Vapores, Chilean Line, Inc.*, 541 F.2d 985 (2d Cir. 1976) and *Brown v. M/V GLOBAL LINK,* No. 01 CIV. 8298 (DC), 2003 WL 22015439, at *2 (S.D.N.Y. Aug. 26, 2003), on which Plaintiff relies are easily distinguishable. Pl.'s Mem. at 8. Those cases involve the settlement and release of personal injury claims made by seamen and longshoremen. Because seamen face a "serious bargaining disadvantage" in dealing with shipowners, courts consider them "wards of admiralty," *Capotorto*, 541 F.2d at 987, and place the burden on shipowners "to show that a release was executed freely, without deception or coercion." *Sagastume,* 579 F.2d at 225 (internal quotation and citation omitted). Courts therefore retain jurisdiction over seamen's claims to prevent the enforcement of releases that may have been procured by duress or unequal bargaining power. No such considerations are present here.

## CONCLUSION

For the foregoing reasons, the Court finds that subject matter jurisdiction is lacking, and Plaintiff claims are therefore DISMISSED as to all Defendants.  The Clerk of Court is respectfully requested to close all open motions and terminate the case.

**SO ORDERED.**

Date:  May 26, 2015
       New York, New York

**VALERIE CAPRONI**
**United States District Judge**